STOKER, Judge,
concurring.
I concur in the result reached by the majority in this case. I find I am in some disagreement with the trial court’s oral reasons for judgment in this case. Therefore, I file this concurring opinion to set forth why I feel that the defendants breached their contract with the plaintiffs.
Although there is no written contract for the construction of any improvements on the lot which plaintiffs agreed to buy and defendants agreed to sell, Mr. Richard M. Baker, one of the partners, admitted under oath in the course of the trial that there was such a contract. Mr. Richard M. Baker was the only member of the partnership to testify. He appears to have been the only member of the partnership actively engaged in the dealing with the plaintiffs, the inspector for the Veterans Administration (Mr. Overton Miller), the lending institution and the New Orleans office of the Veterans Administration.
The record discloses that Richard Baker saw the construction through the first two VA inspections although he had to appeal to the New Orleans office of the VA in order to get approval at the second inspection stage. Although Mr. Miller denied any knowledge of the fact that the New Orleans office of the VA had overriden his rejection of the construction at the second stage, two facts should be noted. First, the New Orleans office issued written instructions overriding Mr. Miller, a fact of which Mr. Miller should ordinarily have been advised by his own agency. Second, Mr. Waldon testified that he told Mr. Miller that Richard Baker had notified Waldon that the New Orleans office of the VA had overridden Miller and had given approval of the second inspection.
Despite the fact that the defendant received their second inspection approval, Mr. Miller for reasons he does not explain, at least to my satisfaction, went back to the construction site and demanded that Richard Baker order his workmen to remove certain paneling in order that he might check behind it for such matters and installation of insulation. Such an inspection related to the second inspection which the defendants had already received through the New Orleans office of the VA.
Richard Baker refused to have the paneling removed as requested by Miller. Baker claims that Miller threatened to refuse approval of the house unless Baker complied with the request. Miller did in fact issue a written request on a VA compliance inspection report form “that the file be closed as Builder will not comply with Compliance Inspection.” At about this time Richard Baker gave Waldon a check for $1,000.00 signed by his brother Champ L. Baker made payable to Waldon. Richard Baker explained that in view of the action of Miller, the defendant partnership could not hope to obtain final approval of the house for VA financing.
The trial court found that the defendants breached the contract to build the house through the refusal of Richard Baker to order the removal of the paneling. The record discloses that defendants were not obligated to do that. Miller’s action could only be based on an ignorance of the fact that his rejection of the second inspection had been overruled. Obviously, there was a lack of communication. If Mr. Miller was not informed by his own agency, the VA, of the fact that he had been overridden, that was a failure in interagency communication. It does not appear that Richard Baker reminded (or informed) Miller at the *753 time he refused to remove the paneling that he already had second inspection approval. The parties appear to have squared off at that point, Miller determined not to approve defendant’s house and Baker not to comply with Miller’s request — even if it meant loosing VA approval. In my opinion the trial court was in error in holding that the defendants breached the contract to build through refusal to remove the paneling.
While I disagree with the trial court’s conclusions, I think that the defendants did breach the contract. The breach resulted in the failure of defendants to request the third and final inspection after the house was completed. The house was completed and was sold to another party. Richard Baker testified that the house met VA standards and was built to comply with the plans and specifications agreed upon by plaintiffs and defendants and approved by the VA.
In summary, it is clear that Richard Baker and his partner broke off the contract with the Waldons upon the assumption that they had reached an impasse with Miller which made it impossible for them to obtain the necessary final approval. Although Mr. Miller’s role in the breakdown in relations may be subject to question, the request for the third inspection should have been made. Had it been made, approval might have been forthcoming. On the other hand, had Miller persisted in his obstinancy upon request for a final inspection, it would then have been reasonable to conclude that the defendants were not at fault and had not breached the contract. For the reasons I have given above, I concur in the result reached by the majority opinion which affirms the trial court.